

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00416-CR

———————————————————

BENJAMIN PAUL TEAL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. F23-2399-362

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

### I. Introduction

A jury found Appellant Benjamin Paul Teal guilty of capital murder, *see* Tex. Penal Code Ann. § 19.03(a), and the trial court sentenced him to incarceration for life without parole, *see id.* § 12.31(a)(2). In four points, Teal challenges the trial court's denial of his directed-verdict motion[1] and failure to include a self-defense jury-charge instruction and complains about the trial court's rulings on his Confrontation-Clause and expert-testimony objections. We affirm the trial court's judgment because the evidence is sufficient to support his conviction, he was not entitled to a self-defense instruction when he denied his involvement in the offense, his Confrontation-Clause argument does not apply to physical evidence, and the expert's testimony was harmless.

### II. Sufficiency and Self-Defense[2]

Teal was indicted for having, on or about March 23, 2023, in Denton County, intentionally or knowingly caused Breanna Dunn's and Ronald Calvert Jr.'s deaths by shooting them with a firearm during the same transaction. *See id.* § 19.03(a)(7)(A). The court's charge allowed the jury to convict Teal either as the murders' perpetrator or as

---

[1]A challenge to the denial of a directed-verdict motion is actually a challenge to evidentiary sufficiency. *Lucio v. State*, 351 S.W.3d 878, 905 (Tex. Crim. App. 2011); *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003).

[2]We combine our evidentiary review with our analysis to avoid repetition, and we address the sufficiency point first because, if sustained, it would provide Teal the greatest relief. *See* Tex. R. App. P. 43.3; *Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991).

a party if it found beyond a reasonable doubt that he had acted with intent to promote or assist the above murders' commission by soliciting, encouraging, directing, aiding, or attempting to aid Silvester Williams[3] in committing the above murders by providing the firearm that Williams used to shoot both victims. *See id.* § 7.02 (setting out law of parties).

In his third point, Teal argues that the trial court erred by denying his directed-verdict motion, asserting that the State's witnesses failed to identify him as the shooter, that no one placed him in the victims' vehicle on the night of the murders, and that no one "placed the weapon in [his] hands." In his fourth point, he complains about the self-defense instruction's omission.

## A. Evidence[4]

Around 10 p.m. on March 23, 2023, Dunn's and Calvert's bodies were found in a still-running vehicle with open windows in the parking lot of a Denton apartment complex near I-35. They had each been shot in the head at close range, killing them almost instantly. There was a backpack in Calvert's lap, and Dunn had her keys in her hands; an open knife—covered in blood spatter—was on the driver's-side floorboard.

---

[3]Williams was charged as a co-defendant and was unavailable at trial based on his Fifth Amendment right not to testify.

[4]In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Because multiple witnesses testified to the same or similar facts, we have consolidated and summarized the evidence viewed in the light most favorable to the verdict.

Loose marijuana was scattered on the ground outside the vehicle, and Calvert's mother testified that she had let him use her vehicle to go to Denton to sell marijuana to Williams.

Williams left his cell phone in the vehicle's backseat, and a search of his phone connected him to Teal and to the apartment complex, the address of which Williams had sent to Calvert at 9:11 p.m. that day.[5] Two 9-millimeter Aguila shell casings were also found in the vehicle, along with Teal's DNA on Calvert's headrest.

Witnesses, who overheard—but did not see—the shootings, told police they had seen two black males fleeing in what was later identified as a white Toyota Corolla belonging to Williams's girlfriend, Kaley Davis. One of the witnesses described the male in the gray sweatsuit as "chubby."[6] A photo from a neighbor's Ring camera, timestamped at 9:19 p.m., showed two black males in the parking lot; one was wearing light-colored

---

[5]Denton Police Detective David Bearden, the lead detective on the case, obtained a search warrant for phone records from Verizon, and those records were admitted without objection. Detective Bearden asked Pam Miller, a crime analyst, to look at the records' location data for Teal and Williams. Outside the jury's presence, Teal objected to Miller's qualifications to testify as an expert, and the trial court overruled his objection, which Teal complains about in his second point. Miller testified that there was a gap of activity on Teal's phone on March 23, 2023, between 7:41 p.m. and 10:55 p.m., when the phone was either in airplane mode or turned off; that at 10:55 p.m., Teal's phone became active at a tower in Dallas; and that at around 2 a.m. on March 24, 2023, Teal's phone became active in the Fort Worth area.

[6]That witness testified that he had heard three shots fired, and he opined that Williams had been the shooter because he saw him "fumbling with his waist" and saw a gun's beige handle on him but did not see a gun on the other man. His companion, in contrast, stated that she had heard two shots fired. She did not see any guns but opined that Williams had moved like he "maybe" had one because he had moved "like he was putting something away."

4

cargo shorts and the other—substantially more heavyset than his companion—was wearing a gray hooded sweatsuit and had used the hood to obscure his face.[7]

Davis testified that Williams had borrowed her car after 6 p.m. that night to go to a class in Denton.[8] North Texas Tollway Authority records from that night showed the Corolla's traveling north to Denton at 8:22 p.m. via the toll road at I-635 and I-35E. At around 10 p.m., the surveillance camera of a property neighboring the apartment complex captured a photo of the Corolla.

At around 3 a.m. on March 24, a Mesquite police officer called Davis to tell her that Williams was at a Dallas hospital; he had been shot in the face during what the Mesquite police considered a carjacking. Davis gave the officer the Corolla's vehicle-identification and license-plate numbers. A 9-millimeter Aguila shell casing was collected from the Mesquite scene, which was five miles from Teal's father's home.

The Corolla was recovered later that day in Fort Worth in a residential area that was half a mile from Teal's mother's home. The Corolla was locked, but officers saw bags of marijuana in plain view. Its trunk contained trash bags filled with big-and-tall men's clothing. When Teal was later arrested, a teal-colored 9-millimeter SCCY handgun was found on him. All three of the shell casings—the two recovered in Denton and the one recovered in Mesquite—had been fired from it.

---

[7]Teal was present at trial, allowing the jury to compare his overall physique to the Ring photo and testimony.

[8]Calvert and Williams were in the same drug-addiction class.

5

When police interviewed Teal after his arrest, he claimed that he had never been to Denton; that he had met Williams at his father's house in Mesquite, where he picked up his children, his children's mother, and some of his belongings; and that he had paid $70 to Williams that night to borrow the Corolla so that he could drive to his mother's house in Fort Worth. However, when the Mesquite police inventoried Williams's clothing, they only found $5.07—not $70.

## B. Sufficiency

Teal complains that nothing put him in Calvert's vehicle on the day in question or at the time of the shooting and that no one saw the weapon in his hands. However, as set out above in summary from multiple witnesses' testimonies and from the tangible evidence, including the three bullets and Teal's DNA on Calvert's headrest, the jury could have determined beyond a reasonable doubt Teal's participation in the murders of Calvert and Dunn either by shooting them himself with his teal-colored weapon or as a party by providing the teal-colored weapon to Williams to shoot them. We overrule Teal's third point.

## C. Self-defense instruction

Relying on the open knife found at Calvert's feet, Teal argues that the trial court erred by denying a self-defense instruction.

A trial court's failure to instruct the jury on a confession-and-avoidance defense is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense. *Maciel v. State*,

6

689 S.W.3d 609, 615 (Tex. Crim. App. 2024). However, confession and avoidance is a judicially imposed requirement that requires defendants who assert a justification defense to admit, or at a minimum to not deny, the charged conduct. *Rodriguez v. State*, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021); *see* Tex. Penal Code Ann. § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter."), § 9.31(a) ("[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."), § 9.32 (setting out when a person is justified in using deadly force against another).

The record reflects that Teal denied his very presence in Denton on March 23, 2023. Without reaching the parties' remaining arguments, *see* Tex. R. App. P. 47.1, we conclude that the trial court did not err by omitting a self-defense instruction, and we overrule Teal's fourth point.

### III. Confrontation Clause

In his first point, Teal asserts that his Confrontation-Clause rights were violated when the trial court admitted into evidence the shell casing from the extraneous and irrelevant Mesquite shooting.[9]

The State responds that a shell casing is not a statement under the Confrontation Clause and that this shell casing's admission was relevant to—among other things—

---

[9]We infer that in addition to his Confrontation-Clause argument, Teal is also challenging the Mesquite bullet casing's relevance.

7

prove identity and motive and that it was admissible as same-transaction contextual evidence when: (1) the shooting occurred less than two hours after the Denton double homicide; (2) the firearms expert compared the two shell casings from the Denton shooting and the shell casing from the Mesquite shooting and determined that they came from the same firearm; (3) the firearm expert determined that the firearm found on Teal during his arrest was the firearm used in all three shootings; and (4) this evidence showed a criminal transaction that began with the shooting and stealing of drugs from Calvert and ended with Teal's shooting Williams and taking the drugs for himself. We agree with the State.

The Sixth Amendment provides that an accused shall "be confronted with the *witnesses* against him." U.S. Const. amend. VI (emphasis added). "The [Confrontation] Clause bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant ha[s] had a prior opportunity' to cross-examine her." *Smith v. Arizona*, 602 U.S. 779, 783, 144 S. Ct. 1785, 1791 (2024) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004)). Because the shell casing was not testimonial evidence, the Confrontation Clause does not apply, and we overrule this portion of Teal's first point. *Cf. id.*; *see Williams v. State*, 513 S.W.3d 619, 637 (Tex. App.—Fort Worth 2016, pet. ref'd) (stating that photos taken during an autopsy are not statements and thus are nontestimonial in nature for confrontation purposes).

Furthermore, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (citing Tex. R. Evid. 401 and discussing relevance). And Rule of Evidence 404(b) allows a party to offer non-character-conformity evidence to prove motive, opportunity, intent, and identity, among other things. *See* Tex. R. Evid. 404(b). As argued by the State and as set out in our evidentiary recitation above, the Mesquite shell casing's admission was highly relevant considering the Denton shootings earlier that night. *See* Tex. R. Evid. 401, 404(b); *see also* Tex. Penal Code Ann. § 3.01 (defining "criminal episode" as the commission of two or more offenses "committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan" or "are the repeated commission of the same or similar offenses"). We overrule the remainder of Teal's first point.

## IV. Expert Testimony

In his second point, Teal argues that Miller was unqualified to testify as an expert about Verizon's cell-tower records. Among its arguments, the State responds that Miller's testimony was harmless when her testimony never placed Teal in Denton; unobjected-to testimony from other witnesses placed him near Mesquite and in Fort Worth that night; and her testimony regarding the times that calls were made was cumulative of the call-detail records, which had already been admitted into evidence without objection. We agree.

Overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see Qualls v. State*, 547 S.W.3d 663, 681–82 (Tex. App.—Fort Worth 2018, pet. ref'd) (holding admission of expert testimony harmless when witnesses both before and after the expert's testimony provided the same evidence); *see also* Tex. R. App. P. 44.2(b) (setting out harm standard for nonconstitutional error); *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021) (stating that in deciding whether there is a fair assurance from the entire record that the error did not influence the jury or had but a slight effect, we consider the error's character and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; and whether the State emphasized the complained-of error).

Because Miller's testimony never placed Teal in Denton, this portion of her testimony could not have affected his substantial rights when it supported his denial to the police that he had ever been there. *See* Tex. R. App. P. 44.2(b); *Macedo*, 629 S.W.3d at 240; *cf. Thompson v. State*, 425 S.W.3d 480, 488–89 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (concluding that expert testimony was helpful when it showed that the appellant's mobile phone was active in the murder scene's general vicinity). And the remaining evidence was admitted without objection and thus could not be a basis for reversal. *See Leday*, 983 S.W.2d at 718; *Qualls*, 547 S.W.3d at 681. That is, the remaining evidence's admission without objection elsewhere made harmless the error, if any, in

admitting Miller's testimony. *See Sanders v. State*, 255 S.W.3d 754, 764 (Tex. App.—Fort Worth 2008, pet. ref'd); *see also Williams v. State*, 531 S.W.3d 902, 922 (Tex. App.—Houston [14th Dist.] 2017) (concluding admission of expert opinion did not affect the appellant's substantial rights when the State "provided ample evidence" to support the same conclusion irrespective of the expert's testimony), *aff'd*, 585 S.W.3d 478 (Tex. Crim. App. 2019). Accordingly, we overrule Teal's second point without reaching his expert-qualification arguments. *See* Tex. R. App. P. 47.1.

## V. Conclusion

Having overruled all of Teal's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 29, 2025

11