**Reverse and Remand and Opinion Filed August 11, 2022**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-18-00870-CR
No. 05-18-00871-CR
No. 05-18-00872-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**KEVIN CASTANEDANIETO, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-57212-X, F17-57213-X, & F18-00407-X**

## MEMORANDUM OPINION ON SECOND REMAND

Before Justices Partida-Kipness, Carlyle, and Smith
Opinion by Justice Carlyle

This case is before us on second remand from the Texas Court of Criminal

Appeals (CCA). The State appeals the trial court's order suppressing appellee Kevin

Castanedanieto's oral statement to police. On original submission and first remand,

we affirmed the trial court's order.[1]

---

[1] *See State v. Castanedanieto*, 631 S.W.3d 131 (Tex. App.—Dallas 2019) (*Castanedanieto I*), *rev'd & remanded*, 607 S.W.3d 315 (Tex. Crim. App. 2020) (*Castanedanieto II*); No. 05-18-00870-CR, 2021 WL 972901 (Tex. App.—Dallas Mar. 16, 2021) (mem. op. on remand, not designated for publication) (*Castanedanieto III*), *rev'd & remanded*, No. PD-0253-21, 2022 WL 1161059 (Tex. Crim. App. Apr. 20, 2022) (not designated for publication) (*Castanedanieto IV*). At this Court's invitation, both parties filed supplemental briefing on first remand and additional supplemental briefing on second remand.

On second remand, the CCA instructs us to address "whether Appellee understood his rights when he gave his second confession and whether his Sixth Amendment right to counsel was violated by the interrogation he underwent after invoking his right to counsel at his arraignment." *See* 2022 WL 1161059, at *1. For the reasons below, we reverse the trial court's order granting Mr. Castanedanieto's motion to suppress and remand this case to the trial court for further proceedings consistent with this opinion.

## Background

As on first remand, we adopt the CCA's recitation of this case's factual background and provide only the facts necessary to our decision. Mr. Castanedanieto was arrested for aggravated robbery in the early morning hours of August 10, 2017. At that time, he was eighteen years old and had emigrated from El Salvador five years earlier.

Shortly after his arrest, around 3:00 a.m., he was interviewed by Detective Thayer of the Dallas Police Department. The interview was video recorded. Detective Thayer conveyed in English the warnings required by *Miranda v. Arizona*[2] and Texas Code of Criminal Procedure article 38.22. He also gave Mr. Castanedanieto a printed Spanish translation of those rights, which Mr. Castanedanieto read aloud and said he understood. Then, Detective Thayer asked Mr. Castanedanieto if he was willing to talk to him. Mr. Castanedanieto stated, "It's

___

[2] 384 U.S. 436 (1966).

–2–

'cause—um—I don't understand." Detective Thayer responded, "Okay, let's talk about what happened tonight." He proceeded with questioning and Mr. Castanedanieto described his activities that led to his arrest.

Later that same day, Mr. Castanedanieto was arraigned before a magistrate, who informed him of a number of rights and warnings, including those required by *Miranda*. When asked whether he wanted an appointed lawyer, Mr. Castanedanieto informed the magistrate that he did.

On the evening of the following day, August 11, Dallas police detective Olegario Garcia went to the jail and asked Mr. Castanedanieto if he would come to police headquarters for an interview. Mr. Castanedanieto agreed, and that interview was also video recorded. Detective Garcia brought a McDonald's meal for Mr. Castanedanieto and allowed him to eat it in the interview room. Detective Garcia told him "basically we're going to go over everything that you talked about with the other Detective" and "maybe you might remember something that you didn't or you might have some questions of your own for me." Then, the interview proceeded as follows:

> DETECTIVE: Alright, [the other detective] read this to you. But everybody who comes in here, we read this to you. You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial. Any statement you make may be used against you as evidence in court. You have the right to have a lawyer present to advise you prior to and during any questioning. If you're not able to employ a lawyer you have the right to have a lawyer appointed to you to advise you prior to or during any

questioning, and you have the right to terminate the interview at any time. Do you understand the rights I read to you?

APPELLEE: Yes, sir.

DETECTIVE: Alright, are you willing to talk to me about, basically going over everything?

APPELLEE: Yeah, I'm gonna tell you—I'm gonna start by basically saying what it was I was doing.

As the interview continued, Mr. Castanedanieto again described his activities leading to his arrest.

Defense counsel filed an omnibus pretrial motion that included the following sentence: "Defendant requests a hearing prior to the introduction of any statements allegedly made by the Defendant, either orally or in writing, to determine the admissibility of same." At the suppression hearing, defense counsel initially claimed the statements from the first interview should be suppressed because Mr. Castanedanieto "didn't demonstrate a full awareness of the rights he was waiving and [the] meaning of the waiver of those rights." As to the statements from the second interview, defense counsel stated that "we carry 1 over to number 2, but additional grounds for number 2 is the State reinitiated contact, not the defendant," and therefore the statements from the second interview were inadmissible.

The State responded that it sought to admit only the statements from the second interview. In support of its position, the State called Detective Garcia, the sole live witness at the suppression hearing. Detective Garcia stated that at the time

of the second interview, he had been "informed that [Mr. Castanedanieto] had given some confessions" to cases other officers were investigating. The prosecutor asked the detective if he ever had any concerns that Mr. Castanedanieto was not understanding him in the interview. Detective Garcia answered, "No, I felt like he understood what I was saying." When asked if that was based on "language, education level, mental acuity," the detective responded that it "seemed like he understood what I was saying, was able to respond properly to the questions I was asking. He had an understanding of slang words, you know. I think that showed me he was ingrained into the culture here in the United States." Detective Garcia further testified that when he finished reading the *Miranda* and article 38.22 warnings, he asked Mr. Castanedanieto if he understood the rights that were read, and Mr. Castanedanieto responded "yes" and nodded his head. The prosecutor asked: "Did it seem, based on your communication with him, that he was voluntary—voluntarily telling you all of these things?" Detective Garcia responded, "Correct."

During closing argument at the hearing, defense counsel asserted that during the first interview, "the defendant expressed the fact that he did not understand the rights that he was waiving." Defense counsel contended:

Now, that applies to the second confession in the following way: My client didn't gain an understanding of what he was doing under the Constitution in the intervening hours between confession 1 and confession 2. So the Miranda warnings given by the second detective don't cure the problem that we had from the first.

The defense also argued that the statements in the second interview were inadmissible because Mr. Castanedanieto asked for an appointed attorney at his arraignment, which occurred between the two interviews, and police reinitiated contact with him in violation of the Sixth Amendment right to counsel. Defense counsel summed up his claims as follows:

> [W]e request that you suppress the second confession on those two bases. Number 1, it was made without full awareness, which is the fruit of the poisonous tree from the first interrogation; and number 2, because the Sixth Amendment was clearly violated in attaining this second confession.

The prosecution argued that, in addition to being informed of his rights in the first interview, Mr. Castanedanieto was informed of them again at the arraignment and yet again in the second interview. And the prosecutor contrasted the conditions of the first and second interviews to explain how Mr. Castanedanieto's understanding of his rights could have differed at those two times:

> Your Honor, he was brought in to custody August 10th in the wee hours of the morning. And you saw from his statement on August 11th that he had been drinking for a week, that he had been smoking marijuana, that he had been partaking in cocaine for the first time. So any of his statements or what—where his mental state was when he was given the rights in English and again in Spanish have no bearing on what he understood when he was given those rights 48 hours later after a long period of sobriety in the jail.
> So we believe that to the first point, Kevin Castaneda-Nieto, when he sat down voluntarily with the detective on August 11th, did understand his rights, did knowingly waive those rights and did agree to speak voluntarily. Understanding that he did have the right to say, "I want my lawyer to be with me," understanding that he did have the right to remain silent and understanding that he could have ended that at any

point in time, knowing those rights, he waived those rights and agreed to speak with the detective voluntarily.

The parties' arguments also addressed Mr. Castanedanieto's claim that a Sixth Amendment right-to-counsel violation had occurred because the police reinitiated contact with him after he had requested counsel at arraignment.

After the trial court granted the motion to suppress, the State filed a motion for reconsideration asserting for the first time that *Montejo v. Louisiana*[3] defeats Mr. Castanedanieto's Sixth Amendment claim. Defense counsel contended pre-*Montejo* Texas case law controls here. The trial court reaffirmed its original ruling granting the suppression motion.[4]

## Standard of review and applicable law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *E.g.*, *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford almost total deference to the trial court's rulings on questions of fact and questions

---

[3] 556 U.S. 778 (2009).

[4] Neither of this Court's previous two opinions reached the Sixth Amendment violation issue. In both opinions, we concluded the trial court had "sufficient basis to conclude Mr. Castanedanieto's second confession was motivated, at least in part, by so-called 'cat out of the bag' thinking" in light of his disclosures in his first interview, which the record shows was conducted despite his expressed lack of understanding regarding his rights. *See Castanedanieto III*, 2021 WL 972901, at *7. The CCA described this as a "coercion theory" and, on initial review, determined this Court "erred in resolving the appeal on a coercion theory because the State did not have an opportunity to develop a complete factual record about whether coercion occurred in the first interview." *See Castanedanieto IV*, 2022 WL 1161059, at *1 (summarizing *Castanedanieto II*). The CCA granted review a second time "to consider whether the court of appeals defied the ordinarily applicable rules for examining a waiver of a defendant's rights by applying the 'cat out of the bag' theory to a claim of unknowing waiver." *Id*. The CCA concluded the issues of "cat-out-of-the-bag and two-step-interrogation technique" were not raised in the trial court and thus our consideration of those issues was improper. *See id*. at *3.

–7–

involving the application of law to fact that turn upon a witness's credibility and demeanor. *Id*. at 79. We review de novo the trial court's rulings on pure questions of law and questions involving the application of law to facts that do not turn upon a witness's credibility and demeanor. *Id*. When, as here, the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume it made implicit findings supported by the record. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We sustain the trial court's ruling if it is correct under any applicable theory of law. *Id*. at 437.

The United States Constitution's Fifth and Sixth Amendments protect different interests. The Fifth Amendment provides suspects in custody a privilege against self-incrimination and a right to interrogation counsel. *Pecina*, 361 S.W.3d at 74–75. The Sixth Amendment guarantees the right to counsel at all "critical" stages of a criminal proceeding. *Id*. at 77. Generally, in Texas, the Sixth Amendment right to counsel is triggered by judicial arraignment or by being taken before a magistrate pursuant to Texas Code of Criminal Procedure article 15.17. *See* TEX. CODE CRIM. PROC. art. 15.17. Both the Fifth and Sixth Amendment rights to counsel apply to post-magistration custodial interrogation and "each is invoked and waived in exactly the same manner." *Pecina*, 361 S.W.3d at 71.

*Miranda* and article 38.22 require that a defendant be given specific warnings in order for statements resulting from custodial interrogation to be admissible. *See Miranda*, 384 U.S. at 458; TEX. CODE CRIM. PROC. art. 38.22. The purpose of

–8–

*Miranda* warnings is to "guard against abridgement of the suspect's Fifth Amendment rights." *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986). Article 38.22's section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things, (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in article 38.22's section 2(a) prior to the statement but during the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings. TEX. CODE CRIM. PROC. art. 38.22 § 3(a). "The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception— the warning that an accused 'has the right to terminate the interview at any time' as set out in Section 2(a)(5) is not required by *Miranda*." *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (citations omitted); *see also Wilkerson v. State*, 173 S.W.3d 521, 527 n.14 (Tex. Crim. App. 2005) (observing that article 38.22 "requires a slightly more elaborate set of warnings than *Miranda* and adds the requirements of either a written, signed statement or an audio or video recording of custodial interrogations by law enforcement").

The State bears the burden of showing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda* and article 38.22. *Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). In determining whether a valid waiver occurred, we consider whether (1) the relinquishment of the

–9–

right was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver was made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Joseph*, 309 S.W.3d at 25. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that a defendant waived his rights. *Id*. The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct. *Id*.

### Analysis

Here, the State contends in a single issue that the trial court "erred in suppressing Appellee's second confession because Appellee's confession was given knowingly, intelligently, and voluntarily, and Appellee's Fifth and Sixth Amendment rights to counsel were not violated."

Mr. Castanedanieto asserts,

> [Detective Garcia] read the 38.22 card, asked Appellee if he understood and moved right into the substance of the interrogation. The evidence is conclusive that Appellee did not comprehend that he had the right to remain silent and have a lawyer present. The obvious explanation for this lack of comprehension, aside from the conduct of both detectives, was that Appellee, a teenager, had recently entered Texas from El Salvador, had little to no knowledge of the American legal system, and that English was his second language. Under these circumstances there was no valid waiver and thus the confession was illegally obtained.

The video recording of the second interview showed Mr. Castanedanieto unrestrained and eating a hamburger and french fries prior to being interviewed. He and Detective Garcia conversed briefly in English as he finished eating. When Detective Garcia joked that he ate the hamburger slowly, Mr. Castanedanieto responded, "It's probably the last hamburger I'm going to eat. I hope not, but I don't know." As Detective Garcia read him his rights, Mr. Castanedanieto nodded his head. When Detective Garcia asked him if he understood, he immediately replied "yes" without hesitating or requesting clarification. Next, Detective Garcia asked Mr. Castanedanieto whether he was "willing to talk" to him. Mr. Castanedanieto responded, "Yeah, I'm gonna tell you—I'm gonna start by basically saying what it was I was doing." Then, he began describing his activities on the night in question to Detective Garcia.

The record supports Detective Garcia's testimony that Mr. Castanedanieto "seemed like he understood what I was saying" and "was able to respond properly to the questions I was asking." Unlike in the first interview, there was no question as to Mr. Castanedanieto's sobriety. Despite his youth and his emigration from El Salvador five years earlier, the totality of the circumstances demonstrates he knowingly, intelligently, and voluntarily waived his rights in the second interview. *See Joseph*, 309 S.W.3d at 25–26 (concluding waiver was valid where defendant said he understood his rights, then participated in interview without requesting attorney or asking that interview be stopped, and record showed no intimidation);

–11–

*see also Fare v. Michael C.*, 442 U.S. 707, 726–27 (1979) (concluding totality of circumstances showed 16-year-old knowingly and intelligently waived his *Miranda* rights where there was no indication he was of insufficient intelligence to understand rights he was waiving). Because the record does not support a finding to the contrary, the trial court erred to the extent it based its ruling on the lack of a knowing, intelligent, and voluntary waiver of rights in the second interview.[5]

As to whether a Sixth Amendment violation occurred, Mr. Castanedanieto asserts the analysis "is controlled by the rationale set out in *Holloway v. State*," in which the CCA "held that at the time Holloway was interrogated the right to counsel had attached and as such his unilateral waiver of his Sixth Amendment right was invalid despite the receipt of *Miranda* warnings." *See Holloway v. State*, 780 S.W.2d 787, 791–93 (Tex. Crim. App. 1989). According to Mr. Castanedanieto, *Holloway* "has never been overruled by the [CCA]" and "is the law in Texas." We disagree that *Holloway*'s rationale controls here.

According to the CCA, the United States Supreme Court's 2009 opinion in *Montejo* "explicitly overruled" the prior rule that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to

---

[5] The parties' initial appellate briefing also addressed the theory that the second interview was "tainted" by the first interview's purported illegality. As described above, the CCA directs us that consideration of "coercion" in the first interview or the issues of "cat-out-of-the-bag and two-step-interrogation technique" are not appropriate in this case. *See Castanedanieto IV*, 2022 WL 1161059, at *3. The CCA also directs that unlike in a coercion or two-step-interrogation context, "[i]n the *Miranda* and Article 38.22 contexts, a prior non-compliant statement does not taint a later compliant statement, so there is no occasion to conduct an attenuation analysis." *Castanedanieto II*, 607 S.W.3d at 328. In accordance with the CCA's directives, we conclude a taint theory is inapplicable here.

counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Pecina*, 361 S.W.3d at 77. *Pecina* explained:

> Distilled to its essence, *Montejo* means that a defendant's invocation of his right to counsel at his Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation. . . . An uncharged suspect may invoke his Fifth Amendment right to counsel (and a defendant who has been arraigned may invoke his Sixth Amendment right to counsel) for purposes of custodial interrogation when the police or other law-enforcement agents approach him and give him his *Miranda* warnings. That is the time and place to either invoke or waive the right to counsel for purposes of police questioning.

*Id*. at 78. The CCA stated that after *Montejo*, both the Fifth and Sixth Amendment rights to counsel during custodial interrogation are "waived in exactly the same manner." *Id*. at 71.

Mr. Castanedanieto does not address *Pecina*'s ruling or its applicability here. At least two sister courts of appeals have recognized that *Pecina* reflects a change in the state of the law described in *Holloway*. *Williams v. State*, 531 S.W.3d 902, 915 (Tex. App.—Houston [14th Dist.] 2017) (describing *Holloway* as "no longer the state of law" regarding waiver of Sixth Amendment right to counsel), *aff'd on other grounds*, 585 S.W.3d 478 (Tex. Crim. App. 2019); *State v. Reising*, No. 04-16-00794-CR, 2017 WL 4518287, at *1–2 (Tex. App.—San Antonio Oct. 11, 2017, no pet.) (mem. op., not designated for publication) (citing *Holloway* as example of "prior law" improperly applied by trial court in light of *Montejo* and *Pecina*). We apply *Pecina* here. *See* 361 S.W.3d at 71, 77–78 (explaining that *Montejo* "explicitly

–13–

overruled" prior rule that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid").

Though the record shows Mr. Castanedanieto requested an attorney during magistration, that invocation of his right to counsel "sa[id] nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation." *Id*. at 78. Detective Garcia read him his *Miranda* and article 38.22 rights at the beginning of the second interview. "That [was] the time and place to either invoke or waive the right to counsel for purposes of police questioning." *Id*. Mr. Castanedanieto did not invoke his right to counsel at that time but instead said he understood his rights and was willing to talk. Thus, he waived his Sixth Amendment right to trial counsel for purposes of that interrogation. *See id*.; *see also Williams*, 531 S.W.3d at 916 (concluding that under *Pecina*, appellant's request for counsel at magistrate hearing did "not translate" to time of later police questioning and thus his voluntary, knowing, and intelligent waiver of right to counsel was valid); *Reising*, 2017 WL 4518287, at *2–3 (applying *Pecina* and reversing trial court's order granting motion to suppress because record did not show defendant who had requested appointed counsel made clear request for counsel at later interrogation when law enforcement officers provided *Miranda* warnings). Accordingly, the trial court erred to the extent it suppressed Mr. Castanedanieto's second confession based on a Sixth Amendment right-to-counsel violation.

Because the trial court's order cannot be upheld under any law applicable to the case, we reverse the trial court's order suppressing Mr. Castanedanieto's second confession and remand for further proceedings.

180870f.u05
180871f.u05
180872f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00870-CR      V.

KEVIN CASTANEDANIETO,
Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F17-57212-X.
Opinion delivered by Justice Carlyle.
Justices Partida-Kipness and Smith
participating.


Based on the Court's opinion of this date, we **REVERSE** the trial court's order granting appellee Kevin Castanedanieto's motion to suppress and **REMAND** this case to the trial court for further proceedings consistent with this Court's opinion.


Judgment entered this 11th day of August, 2022.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00871-CR      V.

KEVIN CASTANEDANIETO,
Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F17-57213-X.
Opinion delivered by Justice Carlyle.
Justices Partida-Kipness and Smith
participating.

Based on the Court's opinion of this date, we **REVERSE** the trial court's order granting appellee Kevin Castanedanieto's motion to suppress and **REMAND** this case to the trial court for further proceedings consistent with this Court's opinion.

Judgment entered this 11th day of August, 2022.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00872-CR          V.

KEVIN CASTANEDANIETO,
Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F18-00407-X.
Opinion delivered by Justice Carlyle.
Justices Partida-Kipness and Smith
participating.

Based on the Court's opinion of this date, we **REVERSE** the trial court's order granting appellee Kevin Castanedanieto's motion to suppress and **REMAND** this case to the trial court for further proceedings consistent with this Court's opinion.

Judgment entered this 11th day of August, 2022.