**Terry TREPANIER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 03–95–00737–CR.**

Court of Appeals of Texas,
Austin.

March 6, 1997.

Ray Bass, Austin, for appellant.

Ken Anderson, District Attorney, John M. Bradley, Assistant District Attorney, Georgetown, for state.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Terry Trepanier's Ford Bronco collided with and killed a bicyclist on February 3, 1995. A jury convicted Trepanier of manslaughter and sentenced him to seven years and six months in prison. *See* Tex.Penal Code Ann. § 19.04 (West 1994). Trepanier challenges the legal and factual sufficiency of the evidence supporting the conviction, asking us to reverse and render judgment of acquittal or to remand for a new trial. We will affirm the conviction.

## FACTS

On the day of the accident, Trepanier was waiting at a red light on northbound Highway 183, a six-lane road. Several other drivers waiting at the light testified to the following events. Two witnesses testified that Trepanier's Bronco was in the far left lane; another stated he was in the middle lane. Beginning as the second or third vehicle from the lead, when the light turned green Trepanier rapidly accelerated and cut between cars in the middle and right lanes until he reached the unimproved right shoulder of the road. In the far right lane, a large Sysco delivery truck was preparing to turn right into a private drive just beyond the intersection, but the driver paused and waited for Gregory Fox, who was bicycling on the shoulder, to clear the driveway. The delivery driver stopped fully when he noticed Trepanier's Bronco approaching rapidly from the rear. Trepanier passed the Sysco truck on the right, driving on the shoulder of the road. The delivery driver saw Trepanier strike Fox from the rear.

The Bronco's impact threw Fox high into the air and killed him instantly. None of the witnesses noticed Trepanier's brake lights before or after the impact. The police report noted the absence of "gouge" or "skid" marks, indicating that Trepanier likely did not brake before, during, or immediately after impact.

After he hit Fox, Trepanier continued driving along the shoulder of the road at a reduced speed. About a quarter mile beyond the point of impact, Trepanier's vehicle got stuck in a drainage ditch. The Bronco made a ninety-degree turn, attempting to drive out of the ditch, but only spun its wheels.

A blood test following the collision showed Trepanier was not under the influence of alcohol or narcotics. He was charged with manslaughter, and the jury found him guilty. Trepanier appeals on the grounds that the evidence was legally and factually insufficient to support a manslaughter conviction.

## DISCUSSION

*Legal Sufficiency*

The critical inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). This Court does not ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin*, 614 S.W.2d at 159.

A person commits manslaughter if he recklessly causes the death of an individual. Tex.Penal Code Ann. § 19.04(a) (West 1994). A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint. Tex.Penal Code Ann. § 6.03(c) (West 1994). "At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App. 1975).

Jurors may accept or reject any or all of the testimony of any witness. They may look to all the evidence in the case, whether offered by the State or the defendant, in determining the facts and issues in the case. *Wright v. State,* 437 S.W.2d 566, 568 (Tex. Crim.App.1969). This Court must ask whether a rational juror could have found that Trepanier "consciously disregarded" the risk of killing a person when he swerved through lanes of heavy traffic at an inappropriate speed and then pulled onto the shoulder to pass a large delivery truck that was waiting to turn right from the right lane.

■ The court's charge instructed the jurors to find Trepanier guilty if they found that he had failed to keep a proper lookout, had failed to control speed, had failed to maintain a single lane, *or* had voluntarily driven on the shoulder. Trepanier argues the disjunctive language in the charge inappropriately permitted the jury to find recklessness on the basis of any one element of the indictment. Trepanier contends that proof of any one of these acts or omissions alone may constitute negligence but cannot, as a matter of law, constitute recklessness.

Our answer to this contention is unnecessary to the legal sufficiency challenge because the record offers evidence supporting *every* omission alleged in the indictment and included in the charge. Numerous witnesses testified that Trepanier moved through two lanes of heavy traffic at an inappropriate speed and attempted to pass a delivery truck by driving on the shoulder before he struck a bicyclist. The jury could have found that Trepanier engaged in all of the conduct alleged.

■ In any event, other courts have held that the acts and omissions alleged may individually constitute recklessness. Driving illegally with obstructed vision on a public road can constitute recklessness. *Banister v. State,* 761 S.W.2d 849 (Tex.App.—Beaumont 1988, no pet.). In *Banister,* a dump truck driver in heavy fog on a farm-to-market road reversed his truck to back up a short distance. A woman driving in the same lane collided with the rear of the truck. "The point is, we think, that Appellant was on a public road, in heavy fog, and proceeding illegally ... while Ms. Kratz was legally proceeding." *Id.* at 850. The failure to maintain a single marked lane may also support a manslaughter conviction. *See Lopez v. State,* 731 S.W.2d 682 (Tex.App.—Houston [1st Dist.] 1987), *rev'd on other grounds,* 779 S.W.2d 411 (Tex.Crim.App.1989). In *Lopez,* the defendant struck a pedestrian and a truck parked on the shoulder. The court concluded that, absent any direct eyewitness testimony, the only reasonable inference from the evidence was that the defendant's failure to maintain a single marked lane caused the pedestrian's death. *Id.* at 684. We hold that, as in the examples above, a reasonable juror could have concluded beyond a reasonable doubt that Trepanier's engagement in any one of the acts or omissions alleged in the indictment constituted recklessness.

■ Trepanier also contends the evidence was insufficient to prove that he was aware of and consciously disregarded the risk of death because there was no evidence that he knew or was aware that a bicyclist was traveling on the shoulder of the highway. A defendant need not be aware of the specific risk of another's death in order to commit manslaughter. In *Rodriguez v. State,* 834 S.W.2d 488 (Tex.App.—Corpus Christi 1992, no pet.), the court of appeals held that the defendant's taking a sharp curve in the road

too fast was sufficient to support a conviction for manslaughter based on recklessness. *Id.* at 490. The defendant's concession that she had taken the corner too fast indicated that she was aware of the risk presented and yet disregarded the danger. *Id.*

Although Trepanier did not make such a concession, we hold there was sufficient evidence from which a reasonable juror could have concluded beyond a reasonable doubt that Trepanier voluntarily created a substantial and unjustifiable risk when he moved onto the shoulder in order to pass the delivery truck on the right, and that he consciously disregarded the risk of killing a bicyclist traveling legally on that shoulder when he continued on around the delivery truck. We overrule the first point of error.

*Factual Sufficiency*

■ When the court of appeals conducts a factual sufficiency review, the court views all the evidence equally, including the testimony of defense witnesses and the existence of alternate hypotheses. The court does not view the evidence in the light most favorable to the prosecution as it does in a legal sufficiency review. The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 136 (Tex.Crim.App.1996); *Stone v. State,* 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed).

■ At trial, Trepanier did not contest the fact that he struck and killed Gregory Fox. His defense rested on the theory that he had suffered a seizure and was not in control of the Bronco when it hit Fox. Dr. Michael Douglas, Trepanier's neurologist, testified regarding Trepanier's history of seizures. Trepanier has suffered from "complex partial" seizures, which cause non-responsiveness to one's environment; a person experiencing a complex partial seizure may continue some habitual motor movements, but loses awareness of the surrounding environment. However, one would not likely be able to maneuver a car during such a seizure. Dr. Douglas emphasized that the beginning and ending points of a seizure are very difficult to determine, although the complex partial seizure usually lasts thirty to forty-five seconds; on cross-examination he agreed that, if Trepanier had experienced a complex partial seizure while driving, he could have recovered control of the vehicle once the seizure had ended.

Trepanier's last reported seizure was in 1983. Since 1985, Dr. Douglas has prescribed for Trepanier a combination of Phenobarbital and Dilantin, a common treatment for those who suffer from such seizures. Dr. Douglas testified that the passage of eleven years between seizures is not abnormal for seizure patients taking medication. Trepanier's blood test following the collision showed levels of medication beneath the "normal" range, although this norm differs from patient to patient and may be affected by external factors like diet, health problems, or other medications. Dr. Douglas could not say whether Trepanier probably did or probably did not have a seizure on the day of the accident.

Certainly, Trepanier presented evidence showing that he could have suffered a complex partial seizure while pulling away from the red light. Trepanier may have been able to keep his hands on the wheel during such a seizure, and he could have regained control once the seizure ended. The time interval from the light turning green to Trepanier coming to a stop in the ditch, about thirty to forty-five seconds, is consistent with the typical duration of a seizure. Trepanier told his doctor that he did not remember what happened during the interval of time, and that he never braked before or after hitting Fox. Trepanier appeared "glassy-eyed" after climbing out of his Bronco. He told police that he had forgotten to take his medication that morning, and his Phenobarbital and Dilantin levels were below normal.

The State's evidence contradicts the likelihood of a seizure. According to several witnesses, Trepanier's deft maneuvering would have required control of the vehicle. Moving across heavy traffic just after the light turned green would have been difficult. Two witnesses thought that Trepanier drove as though he were merely "in a hurry." Several witnesses expressed their surprise at his ability to negotiate the obstacles in the road-

way and drainage ditch. Trepanier's stunned demeanor could be explained as a common response following a fatal crash; it is not uncommon for people to behave oddly just after a serious accident. Trepanier had not reported a seizure in eleven years, and because the normal ranges for Phenobarbital and Dilantin vary widely, the low levels in the blood test do not necessarily increase the probability that Trepanier had suffered a seizure.

This Court cannot substitute its judgment for that of the jury; we may only remand for a new trial when the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust. *See Clewis*, 922 S.W.2d at 135. Although some evidence supported the theory of a seizure, there was evidence to the contrary such that the jury could rationally have rejected the theory and found Trepanier guilty. We conclude that the evidence supporting the conviction is not factually insufficient and overrule the second point of error.

We affirm the trial court's judgment of conviction and sentence.