NO. 12-23-00162-CR   NO. 12-23-00163-CR
NO. 12-23-00164-CR   NO. 12-23-00165-CR
NO. 12-23-00166-CR   NO. 12-23-00167-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL DAVID MASTERSON,* *APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Michael David Masterson appeals his five convictions for manslaughter and one for aggravated assault with a deadly weapon. In seven issues, Appellant argues that the evidence is insufficient to support his conviction, his indictments were improperly consolidated, and the trial court erred by failing to instruct the jury to disregard a comment made by the State, allowing improper opinion testimony, admitting extraneous crime or bad act evidence without proper notice, and permitting the service of a biased juror. We affirm.

## BACKGROUND

Appellant was charged by six separate indictments with manslaughter[1] in the deaths of five victims and aggravated assault with a deadly weapon[2] regarding one victim. He pleaded "not guilty," and the matter proceeded to a jury trial.

---

[1] A second-degree felony punishable by imprisonment for a term of not more than twenty or less than two years and a possible fine not to exceed $10,000.00. *See* TEX. PENAL CODE ANN. §§ 19.04(a), (b) (West Supp. 2023), 12.33(a), (b) (West 2019).

At trial, the evidence showed that on Sunday afternoon, August 16, 2020, on Farm to Market Road 2026 (Folsom Chapel Road) in Shelby County, two pickup trucks were traveling in opposite directions. One was driven by Appellant, the other by fifteen-year-old Madison,[3] an unlicensed driver. In Appellant's backseat were his two- and four-year-old son and daughter, Max and Evie, and his 10-year-old stepdaughter, Violet. In Madison's front passenger seat was her grandmother, Sheila, and in her back seat was her brother, fourteen-year-old Mark. The two trucks approached a hilltop curve in the road, Madison driving in her lane at a speed of around 49 miles per hour,[4] Appellant driving at over 78 miles per hour[5] and entirely in Madison's lane. When the drivers became visible to each other, they had about three seconds to react. Madison evasively swerved into Appellant's lane. Appellant veered in the same direction, and the trucks collided head on. Appellant, Madison, and Mark were injured but alive when help arrived. When state troopers spoke with Appellant, he appeared to be impaired on a substance. Max, Evie, Violet, and Sheila were pronounced dead at the scene. Madison was transported to the hospital but died that evening.

Ultimately, the jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for a term of twenty years and a $10,000 fine in each case. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In Appellant's first issue, he argues that the evidence is insufficient to support his manslaughter convictions because it fails to show his conduct was reckless. In Appellant's second issue, he argues that the evidence is insufficient to support the aggravated assault with a

---

[2] A second-degree felony punishable by imprisonment for a term of not more than twenty or less than two years and a possible fine not to exceed $10,000.00. *See id.* §§ 22.02(a)(2) (West Supp. 2023), 12.33(a), (b).

[3] We use pseudonyms in place of the victims' names in this opinion. *See* TEX. CONST. art. 1, § 30(a)(1) ("A crime victim has . . . the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process.").

[4] The speed limit was 55 miles per hour.

[5] DPS Troopers retrieved various data from the trucks, including their speeds in the seconds before the crash. Appellant's precrash data reflected that at 4.1, 3.1, 2.1, and 1.1 seconds before impact, his speed was a constant "78.3," despite other data showing that at 3.1 seconds his brakes were tapped and the engine revolutions per minute dropped from 2,800 to 2,000. This apparent discrepancy may be explained by the fact that Appellant's event data recorder had an upper limiter such that it would not record speeds higher than 78.3 miles per hour. Based on this information, DPS Trooper Taylor Buster testified that Appellant's truck was traveling "probably over the 78.3 miles per hour."

deadly weapon conviction because it fails to show his conduct was intentional, knowing, or reckless.

**Standard of Review**

The ***Jackson v. Virginia***[6] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether, based on the evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 319-20, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also **Johnson***, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899; *see **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." ***Jackson***, 443 U.S. at 326, 99 S. Ct. at 2793.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id.***

---

[6] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

3

**Applicable Law**

To prove Appellant guilty as charged in each of the manslaughter indictments, the State was required to prove, respectively, that he recklessly caused the deaths of Max, Evie, Violet, Sheila, and Madison. *See* TEX. PENAL CODE ANN. § 19.04(a). To prove Appellant guilty as charged in the aggravated assault indictment, the State was required to prove that he intentionally, knowingly, or recklessly caused bodily injury to Mark by operating his motor vehicle at an unreasonable speed or failing to maintain a single lane of traffic, resulting in a collision, and he used or exhibited a deadly weapon—his truck—during the assault's commission. *See id.* §§ 22.01(a)(1) (West Supp. 2023), 22.02(a)(2).

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *See id.* § 6.03(c) (West 2021). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* Criminal recklessness must not be confused with criminal negligence, a lesser culpable mental state in which a defendant "fail[s] to perceive" a substantial and unjustifiable risk of which he "ought to be aware." *See id.*; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Recklessness requires foreseeing the risk involved and consciously deciding to ignore it. *Williams*, 235 S.W.3d at 751. A reckless defendant makes a calculated decision to gamble with other people's lives. *Id.* at 752.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (West 2021). Under Section 6.04(a), a "but for" causal connection must be established between the defendant's conduct and the resulting harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). If a concurrent cause exists, two possible combinations may satisfy the "but for" requirement: (1) the defendant's conduct alone was sufficient to cause the harm, regardless of the concurrent cause, or (2) the defendant's conduct and the concurrent cause together were sufficient to cause the harm. *Id.* If the concurrent cause alone was clearly sufficient to produce the result, and the defendant's conduct alone clearly insufficient, the defendant cannot be convicted. *Id.*

4

## Analysis

Appellant concedes that he lost control of his truck and entered Madison's lane as he rounded the curve, and the trucks collided within a few seconds or "almost immediately after" becoming visible to the other drivers. He further concedes that driving on the wrong side of the road at a fast speed creates a substantial risk of collision or dangerous evasive action on the part of a vehicle traveling in the opposite direction, resulting in bodily injury or death. Finally, he concedes that a "lack of control, whether because of speeding or otherwise, in a place and time when there is constant potentiality of injury as a result" can support a finding of "a wanton and reckless disregard of the safety of others," as defines "gross negligence," the culpable mental state required to support a manslaughter conviction in some jurisdictions. However, Appellant contends that the evidence here fails to show he acted in conscious disregard of "the unplanned crash" because (1) he was aware of Madison's truck only a few seconds before the crash, (2) he endangered not only Madison and her passengers but his own children, (3) Sheila's gross negligence in allowing Madison to drive without a license was the major contributing cause of the crash, and (4) Madison's faulty evasive action was a cause in fact of the crash.

Appellant's first argument confuses recklessness with the greater culpable mental state of knowledge.[7] Essentially, Appellant argues that he could only have acted in conscious disregard if he was aware of Madison's truck early enough to remove himself from her lane but failed to do so. However, if that were the case, the reasonable inference would be that he was "aware that his conduct was reasonably certain" to cause injuries and death, and he would thus be guilty of murder.[8] *See, e.g.*, **Owens v. State**, 549 S.W.3d 735, 742 (Tex. App.—Austin 2017, pet. ref'd) (sufficient evidence of "knowledge" to support capital murder conviction where defendant, pursued by police, drove wrong way down one-way street, turned onto barricaded street crowded with pedestrians, accelerated to over 55 miles per hour, hit several people, and kept going).

But Appellant was charged with and convicted of manslaughter, not murder. A defendant need not be aware of the specific risk of another's death to commit manslaughter.

---

[7] "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *See* TEX. PENAL CODE ANN. § 6.03(b) (West 2021).

[8] "A person commits [murder] if the person . . . intentionally or knowingly causes the death of an individual." *See id.* § 19.02(b)(1) (West Supp. 2023).

*Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd). To act recklessly here, Appellant need not have been aware that a vehicle was traveling in the oncoming lane but of the risk that one was. *See id.* (sufficient evidence of awareness and conscious disregard of risk of death to support manslaughter conviction where defendant passed delivery truck on right shoulder and killed bicyclist despite no evidence he was previously aware of bicyclist); TEX. PENAL CODE ANN. § 6.03(c). Viewing the evidence in the light most favorable to the verdict, the jury could reasonably infer that Appellant drove at speeds in excess of 78.3 miles per hour on a curvy and undulating two-lane road with a posted speed limit of 55 miles per hour, rounded a blind hilltop curve entirely within the oncoming lane, encountered Madison's truck without sufficient time for either driver to avoid a collision, turned his wheels sharply leaving a yaw mark[9] entirely within Madison's lane, and collided head-on with her truck at or slightly on Madison's side of the center stripe, resulting in Mark's injuries and Madison's, Sheila's, Violet's, Evie's, and Max's deaths. Under these circumstances, we conclude the jury was justified in finding that Appellant acted in conscious disregard of the risk of injury and death created by his driving. *See id.*; *Aliff v. State*, 627 S.W.2d 166, 168, 172 (Tex. Crim. App. 1982) (conscious disregard evident where defendant drove erratically at high speeds, ran red light, locked his brakes leaving skid mark through intersection, and crashed into car, resulting in other driver's death).

Regarding whether Madison's status as an unlicensed driver and "faulty evasive action" caused the crash and negate a finding that Appellant's conduct was reckless, we find no support for these assertions. To the contrary, the record shows that Appellant's conduct alone caused the crash, and no driver in Madison's position could have avoided it. Mark testified that Madison was a safe driver and was in the process of obtaining her license. Madison was driving under the speed limit in the proper lane and only crossed the center stripe when Appellant suddenly appeared in her lane. DPS Trooper Keith Jones testified, based on his nineteen years of experience and over one thousand crash investigations, that reasonable drivers seek open space in such a situation. DPS Trooper Taylor Buster, who made the final crash reconstruction determination, opined that Madison did not have a reasonable amount of time to react to avoid

---

[9] DPS Trooper Taylor Buster testified, "A yaw mark is laid down on the surface from steering input from that vehicle with no braking involved in it. So you go down the road, you turn your wheels real sharp, and it's going to lay down a skid or a striation from a tire mark onto that pavement."

the collision. Allison Stuever, who was driving her pickup truck behind Madison's, testified as follows:

> [A]s we were driving and approaching the turn, I kind of immediately knew something was wrong as soon as I saw another car coming towards us. So once the car was fully visible, it was obvious that they were completely in our lane, so I started stepping on my brakes as soon as I saw—sorry (crying).
>
> . . . .
>
> As the car was visible, I was already stepping on my brakes. I slammed on them when it was fully visible because the car that was in front of me had to swerve over a little bit because the truck that was approaching was entirely in our lane (crying). So the only thing that they could do to avoid was just to do their best to move over out of their way. And once they did, the truck that was approaching just tried to correct into their lane and slammed right into them, and it threw the truck in front of me off the road all the way to the other side.

According to Stuever, if Madison's truck was not present, Appellant "definitely" would have hit Stuever.

Although Appellant argues that Trooper Buster[10] testified Madison's "faulty evasive action" of veering left across the center stripe was a cause in fact of the crash, the record shows otherwise. To the contrary, Buster opined that Madison did not have a reasonable amount of time to react to avoid the collision, and there was nothing she could do to prevent the crash. When asked about the term "faulty evasive action," Buster explained that a faulty evasive action occurs "if you take no action at all or if an action that you take still results in a crash." He illustrated the concept with the example of a driver who swerves to avoid a deer but hits a tree. A crash report would label this driver's action a "faulty evasive action" because her attempt to avoid a crash failed. Here, Madison's attempt to avoid a crash failed. However, if by veering left she missed Appellant's truck, the crash report would not reflect a "faulty evasive action." Based on the foregoing evidence, we reject Appellant's argument that his culpability is relieved by Sheila's or Madison's actions.

Finally, the fact that Appellant endangered his own children does not show he was any less aware of the risk created by his manner of driving or that he did not consciously disregard that risk. Accordingly, for all these reasons, we conclude that the evidence supports the jury's implied finding of recklessness. We overrule Appellant's first and second issues.

---

[10] Appellant cites Trooper Buster's testimony but mistakenly attributes it to Trooper Dustin Ramos.

## CHARGE ERROR

In Appellant's third issue, he argues that the trial court erroneously failed to include sua sponte in the jury charge an instruction to disregard the State's voir dire comment that "this Defendant doesn't follow the rules." He appears to contend that this omission was error because an instruction to disregard the comment is "the law applicable to the case."[11] He cites no authority supporting the proposition that an instruction to disregard can constitute "the law applicable to the case." *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument with appropriate citations to authorities). Accordingly, we overrule Appellant's third issue.

## OPINION TESTIMONY

In Appellant's fourth issue, he argues that the trial court erred by overruling his objection to Trooper Buster's testimony that his conduct was reckless.

### Applicable Law

Under Rule 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. A party may challenge expert testimony on various grounds, including (1) qualification, (2) reliability, and (3) relevance. *Williams v. State*, 531 S.W.3d 902, 920 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 585 S.W.3d 478 (Tex. Crim. App. 2019). Each of these grounds raises distinct questions and issues, and an objection based on one does not preserve error based on another. *Id.* "An opinion is not objectionable just because it embraces an ultimate issue." TEX. R. EVID. 704.

### Analysis

At trial, the State read the definition of "reckless" to Trooper Buster, after which the following exchange occurred:

> DEFENSE COUNSEL: Objection, Your Honor. This is in the jury's purview. This is a question that they're ultimately asked to decide, so it's not proper for this witness to answer.
>
> COURT: Response, Mr. Price?

---

[11] "[T]he judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West Supp. 2007).

PROSECUTOR: Your Honor, I believe he has a right to express whether or not this action on the part of the Defendant on this particular occasion under the circumstances of the physical evidence, the data he's retrieved, is reckless or not.

COURT: I agree. Objection overruled.

PROSECUTOR: Having heard that definition, do you have an opinion of whether this Defendant, Mr. Masterson, was reckless or not related to this accident we're dealing with here?

BUSTER: Yes, sir, I believe he was.

On appeal, Appellant acknowledges Rule 704 but argues that it does not apply because Trooper Buster's opinion "went far beyond what is allowed by [Rule 704] because Masterson's mental state was **the issue** of this case." We decline to carve out from Rule 704 an exception for ultimate issues that happen to be the sole contested issue in a case. Appellant does not explicitly challenge the trial court's ruling on any other grounds, and to the extent that his citations to authority could be construed to raise other grounds, any error based on those grounds is not preserved for our review. *See* TEX. R. APP. P. 33.1; *Williams*, 531 S.W.3d at 920. Accordingly, we overrule Appellant's fourth issue.

## INDICTMENT CONSOLIDATION

In Appellant's fifth issue, he argues that no legal basis existed for consolidating the indictments against him. We disagree.

"A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a) (West 2021). Under chapter 3 of the penal code,

> "[C]riminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2) the offenses are the repeated commission of the same or similar offenses.

*Id.* § 3.01 (West 2021). "When a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, the state shall file written notice of the action not less than 30 days prior to the trial." *Id.* § 3.02(b) (West 2021).

Appellant acknowledges that the State timely filed written notice of the consolidation of the six indictments against him and that he affirmatively stated in open court he had no objection to the procedure. Nonetheless, he argues that the trial court erred by approving the consolidation because the State's notice alleged he was "charged by more than one indictment for offenses arising out of the same criminal episode" but failed to explain the "sameness.'" Appellant further challenges the application of the phrase "committed pursuant to the same transaction" in this case because he "had no intent to transact or purpose of transacting with anyone."

Without citation to authority, Appellant defines a "transaction" as something that involves "a communicative action or activity involving two parties or things that reciprocally affect or influence each other." However, as the State observes in its brief, the court of criminal appeals defines the phrase "same criminal transaction" as "a continuous and uninterrupted chain of conduct occurring over a very short period of time . . . in a rapid sequence of unbroken events." *Jackson v. State*, 17 S.W.3d 664, 669 (Tex. Crim. App. 2000). Based on the facts of this case, we conclude that the offenses were committed pursuant to the same transaction and the cases were properly consolidated. *See id.*; TEX. PENAL CODE ANN. § 3.02. Accordingly, we overrule Appellant's fifth issue.

### EXTRANEOUS CRIMES OR BAD ACTS

In Appellant's sixth issue, he argues that the trial court erred by permitting the State to introduce evidence of extraneous crimes or bad acts during the punishment phase without proper notice.

### Standard of Review and Applicable Law

Regarding the admissibility of evidence of extraneous crimes or bad acts during the punishment phase of trial, the code of criminal procedure provides the following:

> (a)(1) [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible[.]
>
> . . . .

(g) On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence.

TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1), (g) (West Supp. 2023).  Regarding notice, Rule 404(b) provides the following:

On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

TEX. R. EVID. 404(b)(2). We review a trial court's determination regarding the admissibility of extraneous offense evidence under an abuse of discretion standard.  *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).

"The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional error." *Ruiz v. State*, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009, pet. ref'd).  Under Rule 44.2(b), a nonconstitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b).  "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  The purpose of Rule 404(b) notice is to prevent surprise.  *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001).  Thus, unless the defendant is surprised by substantively admissible extraneous act evidence, any error in its admission based on a lack of notice may have a "substantial" but never "injurious" effect or influence on the verdict. *Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005).

**Analysis**

On May 13, 2021, Appellant requested notice of any extraneous offenses or bad acts that the State might introduce at trial.  On May 22, 2023, the State filed its notice, which identified the following acts and offenses:

1) On or about April 29, 2020, in Shelby County, Texas, the defendant was involved in a 3-vehicle wreck on FM 2026, in Center, Texas.

2) On or about April 8, 2021, in Shelby County, Texas, the defendant was arrested for Public Intoxication—Class C Misdemeanor.

3) On or about December 5, 2021, in Shelby County, Texas, the defendant was observed falling asleep in his vehicle while in the drive-thru lane of Taco Bell.  The defendant was then seen at the EZ Mart and was asked to perform a Field Sobriety Test but was

considered unable to complete due to his medical injuries and was given a courtesy ride home as a precaution.

4) On or about August 4, 2022, in Shelby County, Texas, the defendant as [sic] arrested for Possession of Marihuana—Class B Misdemeanor. As part of the investigation and/or arrest, Trooper Ramos retrieved the defendant's Driver License Record which consists of 5 pages and can be viewed in the District Attorney's files through the TechShare Program.

5) On or about April 24, 2023, in Shelby County, Texas, the defendant was arrested for Delivery or Offer of Delivery of a Dangerous Drug—State Jail Felony. The charge is pending presentation to a Grand Jury.

In the punishment phase, State's witness Andy Williams testified that he lived and owned a gas station on Folsom Chapel Road for many years. He knew Appellant since he was a child, witnessed his conduct as a young driver, and would not describe him as a careful and cautious driver. Williams testified that when Appellant was in high school, he drove toward Williams's vehicle at a speed of about 60 miles per hour while he was preparing to turn into his driveway and swerved around him only at the last minute. Williams subsequently spoke with Appellant's father, David Masterson, about his conduct. David's response was "basically, boys will be boys," and nothing changed. Williams was not surprised when he heard about the wreck in this case.

Charles Gaddy, a close neighbor of Appellant, testified that he observed Appellant's driving habits on many occasions, both within their small circle-drive subdivision off Folsom Chapel Road and on Folsom Chapel Road itself. On November 6, 2021, Appellant knocked at Gaddy's door. When Gaddy answered, he observed that Appellant was unsteady on his feet and slurring his words. Appellant told Gaddy he ran his truck into a tree and asked to borrow a phone to call his father. After Appellant used Gaddy's phone, he walked to his truck in another neighbor's yard and tried to start it.

Gaddy further testified that on November 30, he was driving on Folsom Chapel Road when Appellant passed him on a curve at a high rate of speed, veered into his lane, and forced him off the road. Appellant then veered back into the oncoming lane and traveled in it for "quite some time." At some point during both Williams's and Gaddy's testimony, Appellant requested and received running objections based on a lack of notice as required under Article 37.07.

12

On appeal, Appellant challenges the admission of this evidence over his Article 37.07(g) objection. He contends, without elaboration, that "[f]rom the limited cross-examination of the witnesses, both unfair surprise and prejudice resulted from the lack of notice."

The State contends that notice of Williams's testimony was not required because it constitutes general character evidence rather than extraneous act evidence. Regarding Gaddy's testimony, the State argues that (1) Appellant's objection was untimely, and (2) although the extraneous acts were excluded from the State's written notice, Appellant received notice of them through three bond rescission motions filed by the State and discussions between prosecutors and defense counsel. Finally, the State contends the record fails to show Appellant was surprised by the evidence or unable to prepare for trial and observes that he did not ask for a continuance.

Even assuming all the challenged testimony was erroneously admitted, we cannot conclude that its admission was injurious to Appellant. He had an opportunity to cross-examine Williams and Gaddy. When Appellant testified in his own defense, he did not dispute their testimony. The record reveals that Appellant's strategy was to show that he was a good person and father who was devastated by the wreck, and that his subsequent increase in substance abuse and legal difficulties were attributable to post-traumatic stress disorder and possible traumatic brain injury rather than his immutable personality traits. Although Appellant received notice of other extraneous acts of bad driving both before and after the wreck, he did not attempt to show that he was a good driver. Thus, notice of the challenged extraneous acts would not likely have affected Appellant's trial strategy in any meaningful way.

The State's bond rescission motions refer to his "accident" on "November 6, 2021." Both Gaddy's and Williams's names were included in the State's witness list, filed March 21, 2023. At trial, Appellant neither claimed that he was surprised by their testimony nor requested a continuance based on surprise. Under these circumstances, we conclude that any error here did not affect Appellant's substantial rights, and, therefore, we disregard it. *See* TEX. R. APP. P. 44.2(b); ***McDonald v. State***, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (error in admitting extraneous acts evidence without notice harmless where defendant had opportunity to cross-examine witness, defendant received notice of similar extraneous acts, strategy change based on notice was "hard to imagine," and defendant did not request continuance); ***Hernandez***, 176 S.W.3d at 825; ***King***, 953 S.W.2d at 271. Accordingly, we overrule Appellant's sixth issue.

In Appellant's seventh issue, he argues that he was deprived of a fair trial because a juror biased against his defense was permitted to serve.

**Standard of Review and Applicable Law**

We review complaints regarding the trial court's ruling on a challenge for cause for an abuse of discretion. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016). Because the trial court is in the best position to evaluate a potential juror's demeanor and responses, we give considerable deference to its ruling on a challenge for cause. *Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021). "When the potential juror's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision." *Colburn v. State*, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998).

A challenge for cause is made on the ground that some fact makes a potential juror incapable of serving or unfit to serve on the jury. TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (West 2006). "The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and follow instructions in accordance with the law." *Hudson*, 620 S.W.3d at 731. "[T]he proponent of a challenge for cause has the burden of establishing that the challenge is proper." *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). To meet its burden, the proponent must show that the venire member understood the requirements of the law and could not overcome his prejudice well enough to follow the law. *Id.* A defendant may challenge a potential juror if "he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor." TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (West 2006).

If a trial court errs in overruling a challenge for cause, the appellant must show he was harmed because he was forced to use a peremptory strike to remove the venire member and that he suffered a detriment from the loss of that peremptory strike. *Buntion*, 482 S.W.3d at 83. Error is preserved for review only if the appellant (1) used all his peremptory strikes, (2) requested and was refused additional peremptory strikes, and (3) was forced to accept an identified objectionable juror whom he would not have accepted had his challenge for cause or additional peremptory strikes been granted. *Id.*

14

**Analysis**

Appellant contends that the trial court erred by denying his challenge of venire member 22, who served on the jury, because she indicated she could not consider finding him not guilty of manslaughter but guilty of the lesser included offense of criminally negligent homicide.[12] Appellant failed to preserve any such error. By showing that venire member 22 served on the jury, the record indicates that Appellant did not use a peremptory strike to remove her. Appellant states in his brief that he "presumably . . . exhausted his peremptory strikes on other persons," but we find no such indication in the record, nor any indication that he requested additional peremptory strikes.

Furthermore, even if Appellant preserved his error for our review, we could not conclude that the trial court erred. Although the record shows that initially venire member 22 unequivocally stated she could not consider the lesser included offense, it also indicates some confusion and subsequent vacillation on her part. After further questioning by the State, the following was the final exchange on the subject:

> DEFENSE COUNSEL: So are you saying that you could not consider a lesser included offense if that was the law presented to you by the judge?
>
> VENIRE MEMBER 22: After I think about it, I could. If I—you know, after I heard everything and put it all together, then I could based on the information; but, yes, I could.

Giving proper deference to the trial court, we could not say it abused its discretion in denying the challenge. *See id.* at 84; *Hudson*, 620 S.W.3d at 731; *Colburn*, 966 S.W.2d at 517. For the foregoing reasons, we overrule Appellant's seventh issue.

**DISPOSITION**

Having overruled Appellant's seven issues, we *affirm* the trial court's judgments.

GREG NEELEY
Justice

Opinion delivered August 7, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[12] "In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." TEX. CODE CRIM. PROC. ANN. art. 37.08 (West 2006).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-23-00162-CR**

**MICHAEL DAVID MASTERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

___

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 21CR21699)
___

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-23-00163-CR**

**MICHAEL DAVID MASTERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 21CR21700)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-23-00164-CR**

**MICHAEL DAVID MASTERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 273rd District Court

of Shelby County, Texas (Tr.Ct.No. 21CR21702)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-23-00165-CR**

**MICHAEL DAVID MASTERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 21CR21703)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-23-00166-CR**

**MICHAEL DAVID MASTERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 21CR21704)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-23-00167-CR**

**MICHAEL DAVID MASTERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 21CR21709)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*